**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Airbus DS Optronics GmbH, | No. CV-14-02399-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Nivisys LLC, et al., | |
| Defendants. | |

Defendants Nivisys, LLC ("Nivisys") and WWWT Enterprises, LLC ("WWWT") present the question of whether this case should be litigated in the District of Arizona or out in the West Texas town of El Paso. In addition to this motion for a change of venue (Doc. 45), the parties have filed numerous other motions. The Court now rules on the pending motions.

## I.      Background

Plaintiff Airbus DS Optronics GmbH ("Airbus") filed this lawsuit for declaratory relief against Defendants Nivisys, LLC ("Nivisys") and WWWT Enterprises, LLC ("WWWT"), seeking a declaration that Nivisys and WWWT are liable to Airbus on a judgment against their alleged predecessor, Nivisys Industries, LLC ("Nivisys Industries").

## II.      Motion to Change Venue

WWWT moves for a change of venue, asking the Court to transfer this case to the Western District of Texas, El Paso Division. (Doc. 45 at 2). Nivisys joins in WWWT's

motion. (Doc. 46).

### A.    Background[1]

Nivisys Industries is a now-defunct limited liability company organized under the laws of the state of Arizona. (Doc. 55 at 2). Its corporate history is somewhat complex, but the following facts suffice for purposes of deciding the pending motion. Airbus and Nivisys Industries entered into a contract, which the latter breached around October 2011. (Doc. 28 at 3). By this same time, Nivisys Industries had defaulted on a credit agreement with a third party and ceased business operations. (Doc. 41-1 at 3). In November 2011, First Texas Holdings Corporation ("First Texas"), a Delaware corporation with its principal place of business in El Paso County, Texas, (Doc. 55 at 2), lent money to Nivisys Industries to restart its operations, (Doc. 41-1 at 4). Following additional loans to Nivisys Industries, First Texas exercised an option to purchase Nivisys Industries' prior credit agreement. (Doc. 41-1 at 4). First Texas then became the senior secured creditor of Nivisys Industries. (*Id.*) First Texas assigned its rights and security interests to Nivisys, who demanded that Nivisys Industries cure its default. (*Id.* at 5). Nivisys then filed a receivership action against Nivisys Industries in Maricopa County Superior Court, seeking damages and requesting appointment of a receiver. (Doc. 51-1 at 39).

In March 2012, Nivisys assigned its rights and security interests to WWWT, who became Nivisys Industries' senior secured creditor. (*Id.*) After Nivisys Industries threatened to file bankruptcy, it entered into a settlement agreement with WWWT in which Nivisys Holdings, LLC ("Nivisys Holdings") (Nivisys Industries' parent company) surrendered its ownership interests in Nivisys Industries to WWWT in exchange for a release from the credit agreement. (*Id.*) Nivisys Industries, however, still owed WWWT

---

[1] "When reviewing a motion to transfer venue . . . a court may consider evidence outside of the pleadings but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *Sleepy Lagoon, Ltd. v. Tower Grp., Inc.*, 809 F. Supp. 2d 1300, 1306 (N.D. Okla. 2011). The Court has found the facts accordingly.

Because the standard for considering the facts is different on a motion to transfer venue than it is for a motion to dismiss, the Court has separately stated the background sections for each motion at issue.

1  under the credit agreement and eventually agreed to surrender most of its assets to

2  WWWT as partial satisfaction of its debt owed. (*Id.* at 6). Nivisys Industries also sold

3  most of its personal property to Nivisys, except for certain government contracts. (*Id.*)

4  After the government contracts were fulfilled, Nivisys Industries (then called N.I.

5  Liquidation, LLC) was dissolved. (*Id.*)

6      After WWWT acquired its ownership interests in Nivisys Industries and Nivisys

7  Industries sold most of its personal property to Nivisys, most of Nivisys' operations

8  moved to Texas.[2] (*Id.* at 7). All of Nivisys' operations are currently in Texas, including

9  manufacturing, engineering, and administration, with the exception of four employees

10  who remain in Arizona. (*Id.*)

11      According to Defendants, many of the transactions involving Defendants took

12  place in Texas. Defendants allege that the negotiations relating to the loan from First

13  Texas occurred in Texas, Virginia, and Maryland. (Doc. 41-1 at 7). They also allege that

14  the assignment from Nivisys to WWWT occurred in Texas, the surrender agreement

15  between Nivisys Holdings and WWWT was negotiated and executed in Texas, and a bill

16  of sale from WWWT to Nivisys was executed in Texas. (*Id.*) Airbus disputes some of

17  these assertions, claiming that the signatories to some of these agreements were Arizona

18  residents. (Doc. 60 at 6). Airbus points out that Joe Walsh, the President of Nivisys, is an

19  Arizona resident. (*Id.*) Airbus also alleges that parties to the various agreements involving

20  Nivisys, Nivisys Industries, WWWT, and First Texas were represented by Arizona

21  counsel. (*Id.*)

22      Airbus first sued Nivisys Industries in a foreign court, and then obtained a

23  judgment against Nivisys Industries in Maricopa County Superior Court. (Doc. 51-1 at

24  21-22). Airbus seeks in the present action to collect on this judgment against Defendants.

25  

26  [2] The Court has reviewed Airbus's contention that Nivisys continued to operate its
   business in Arizona until "at least July 31, 2014." But Airbus's citations do not support
27  this contention; they merely show that in late 2012 there were Nivisys Industries
   operations in Arizona. *See* (Doc. 41-2; Doc. 51-2). For example, although Airbus cites
   Nivisys' response to an interrogatory as evidence that Nivisys is currently being operated
28  from Scottsdale, Arizona, most of the employees disclosed as having an Arizona
   residence last worked for Nivisys Industries in 2012. *See* (Doc. 60-1 at 23).

## B.   Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. . . ." 28 U.S.C. § 1404(a). The purpose of the change of venue statute is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citation and internal quotation marks omitted).

"When determining whether a transfer is proper, a court must employ a two-step analysis. A court must first consider the threshold question of whether the case could have been brought in the forum to which the moving party seeks to transfer the case." *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1093 (N.D. Cal. 2013). "In order that the case 'might have been brought' in the proposed transferee district, the court there must have subject matter jurisdiction and proper venue, and the defendant must be amenable to service of process issued by that court." *Kachal, Inc. v. Menzie*, 738 F. Supp. 371, 372-73 (D. Nev. 1990).

Second, a court must consider whether the proposed transferee district is a more suitable choice of venue based upon the convenience of the parties and witnesses and the interests of justice. *See Park*, 964 F. Supp. 2d at 1093. The Ninth Circuit Court of Appeals has enumerated factors that a court may consider in making this determination:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). No single factor is dispositive. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988).

The party seeking a change of venue bears the burden of establishing that a transfer of the case is proper. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d

270, 279 (9th Cir. 1979).

### C.    Analysis

Airbus does not challenge the motion to change venue on the basis that the Western District of Texas is not a proper venue for this lawsuit. Accordingly, the Court confines its analysis to the dispute at issue: whether the convenience of the parties and witnesses and the interests of justice justify a change of venue.

Defendants argue that several factors cause the Western District of Texas to be the better venue for this case. The Court will address each factor in turn.

### 1.    Location Where the Relevant Agreements were Negotiated and Executed

Defendants argue that a transfer of venue to the Western District of Texas is appropriate because the agreements relevant to Airbus's claims were executed and negotiated outside of Arizona, mostly in Texas. (Doc. 45 at 5). They contend that the relevant agreements that are the subject of this lawsuit are those that allegedly give rise to Nivisys' liability as the successor to Nivisys Industries. (*Id.*); *see also* (Doc. 29 at 4). Defendants assert that the negotiations concerning the purchase of the credit agreement, the assignment of rights, and the surrender agreement between WWWT and Nivisys Holdings, among other agreements, were all primarily negotiated in Texas. (Doc. 45 at 5).

Airbus argues that the agreements upon which its lawsuit is based are not the agreements between Nivisys Industries, WWWT, First Texas, and others, but rather the original contract and purchase order between Airbus and Nivisys Industries as well as the judgment that Airbus obtained against Nivisys Industries in an Arizona court. (Doc. 60 at 5). Thus, Airbus contends, the relevant agreements were negotiated and executed in Arizona. The Court disagrees. Airbus' First Amended Complaint purports to state a cause of action for successor liability based upon the dealings between Nivisys Industries, Nivisys, and WWWT. *See* (Doc. 29 at 4). Moreover, Airbus identifies itself as a creditor of Nivisys Industries. (*Id.* at 5). Once Airbus reduced its claim against Nivisys Industries

to a final judgment, the underlying cause of action giving rise to the judgment is irrelevant for purposes of collecting on that judgment.

Airbus also alleges, however, that the agreements between Nivisys Industries, Nivisys, WWWT, and First Texas were not primarily negotiated in Texas. Airbus points out that out of six signatories to the settlement agreement between WWWT, Nivisys Industries, and Nivisys Holdings, all but four were and are residents of Arizona. (Doc. 60 at 6). Thomas Walsh, the president of WWWT, resides in Texas. (Doc. 41-1 at 8). The remaining signatory resides in Virginia. (Doc. 45 at 7). The Court finds that the extent to which the various agreements at issue were negotiated by companies based in Texas, this does not overcome the Arizona connections such that this factor supports Texas venue.

### 2.     The State Most Familiar with the Governing Law

Defendants argue that the governing law in this case is that of Texas, and as such Texas is most familiar with the governing law. (*Id.* at 5). Airbus contends that Arizona law applies. (Doc. 60 at 8). Because the Court has not yet determined which state's law applies, this factor does not weigh in favor of either venue.

### 3.     Plaintiff's Choice of Forum

Defendants argue that Airbus's choice of forum is entitled to less deference than it would otherwise be afforded because Airbus does not reside in Arizona. (Doc. 45 at 6). Generally, a plaintiff's choice of forum is entitled to substantial consideration; however, "the degree of deference is substantially diminished" when the chosen forum is not plaintiff's residence, the conduct at issue occurred in a different forum, or plaintiff's choice of forum was its second choice. *Park*, 964 F. Supp. 2d at 1094. Here, Airbus is entitled to some deference because although it does not reside in Arizona, some of the conduct at issue occurred in Arizona. Some of the signatories to the various transactions involving Nivisys Industries resided in Arizona, and Nivisys Industries continued to operate in Arizona for at least a short while after Defendants became involved as a lender (and later owner). Accordingly, this factor weighs slightly in favor of Arizona.

### 4.      The Respective Parties' Contacts with the Forum

Defendants contend that neither party has substantial contacts with Arizona. (Doc. 45 at 6). They contend that virtually all of the witnesses and records are in Texas. (*Id.*) But as the Court has explained, most of the witnesses to the agreements allegedly giving rise to successor liability reside in Arizona. The convenience of witnesses "is often the most important factor in resolving a motion to transfer." *Park*, 964 F. Supp. 2d at 1095 (citation omitted). Airbus also correctly points out that Nivisys has substantial contacts with Arizona because it continued operations within the state and currently represents to the world that it operates in Scottsdale, Arizona. (Doc. 60 at 10).

Most significantly, Defendants initiated a receivership action in Maricopa County Superior Court against Nivisys Industries. Thus, Defendants have already had contacts with Arizona courts.

Accordingly, this factor weighs in favor of Arizona.

### 5.      Contacts Relating to the Parties' Cause of Action in the Chosen Forum

Defendants argue that because most of the records and witnesses are in Texas, the contacts relevant to Airbus's cause of action support venue in Texas. (Doc. 45 at 7). Airbus argues that because it contracted with Nivisys Industries within Arizona and a number of witnesses reside in Arizona, this factor favors Arizona. (Doc. 60 at 10-11). Although Defendants contend that the facts giving rise to this litigation occurred in Texas, because the assignments and settlement agreements involved both Texas and Arizona companies, this factor is neutral.

### 6.      Differences in the Cost of Litigation in the Two Forums

Defendants contend that the cost of litigation will be higher in Arizona rather than Texas, and therefore this favors transferring venue to Texas. (Doc. 45 at 8). But many witnesses are located in Arizona, and although many documents are located in Texas, there is no significant added expense to producing documents in Arizona instead of Texas. The fact that Defendants' counsel is located in Texas, however, tips this factor in

1  favor of Texas.

2  **7.      The Availability of Compulsory Process**

3  Airbus argues that because most of the witnesses reside in Arizona, they will be

4  outside the subpoena power of the Western District of Texas. (Doc. 60 at 13). Defendants

5  argue that because most of the witnesses reside in Texas, they will be outside the

6  subpoena power of the District of Arizona. (Doc. 45 at 8). Because most of the

7  signatories to the settlement agreement and the other agreements were Arizona residents,

8  the availability of compulsory process favors the District of Arizona.

9  **8.      Ease of Access to Sources of Proof**

10  Because this case involves both Arizona and Texas companies and witnesses, both

11  the District of Arizona and the Western District of Texas have approximately equal

12  access to sources of proof. As with the previous factor, the number of witnesses in each

13  state favors Arizona, and because document production can occur in either state, this

14  factor favors Arizona.

15  **9.      Public Policy**

16  The public policy of the forum state is a factor to be considered in analyzing a

17  motion to change venue. *Jones*, 211 F.3d at 499. "Arizona has a basic public policy

18  interest in regulating conduct within its borders." *Landi v. Arkules*, 835 P.2d 458, 463

19  (Ariz. Ct. App. 1992). Central to Airbus's contentions for successor liability is that by

20  continuing to operate within Arizona and representing that Nivisys continued to operate

21  within Arizona, Defendants are successors of Nivisys Industries. Thus, the Arizona

22  connections in this case are relevant to the issue of collection on Airbus' judgment. On

23  the other hand, Texas also has a public policy interest in adjudicating disputes that occur

24  within its borders. But the present dispute spans both states, and considering that the basis

25  for successor liability involves continuing Arizona operations, public policy favors

26  Arizona.

27  **10.     Conclusion**

28  Weighing the factors, the Court concludes that a change of venue to the Western

1    District of Texas is not warranted. Although the facts alleged in this case involve both
2    Arizona and Texas witnesses and entities, the fact that Airbus obtained an Arizona
3    judgment against Nivisys Industries and Defendants' liability is based in part upon their
4    continued operations of a company named Nivisys within Arizona both weigh in favor of
5    Arizona as the best venue for this case. Moreover, Airbus is entitled to some deference in
6    its choice of forum. For these reasons, the Court will deny Defendants' request to change
7    venue.

8    **III.    Motion to Dismiss**

9        WWWT moves to dismiss Airbus's First Amended Complaint on the grounds that
10   it fails to state a claim upon which relief can be granted. (Doc. 41).

11       **A.    Background**

12       Airbus alleges the following facts, which the Court assumes to be true for
13   purposes of deciding the pending motion to dismiss: Nivisys Industries, LLC ("Nivisys
14   Industries") was a limited liability company organized under the laws of the State of
15   Arizona, formed on or about January 26, 2003. (Doc. 28 ¶ 8). In March 2008, Nivisys
16   Industries' members sold their full interest in Nivisys Industries either to Relativity
17   Holding, LLC ("Relativity Holding"), a Delaware limited liability company, or to one of
18   Relativity Holding's subsidiaries, Nivisys Holdings, LLC ("Nivisys Holdings"). (*Id.* ¶ 9).

19       In or about October 2011, Nivisys Industries breached a contract between itself
20   and Airbus that had been executed approximately in or about September 2008. (*Id.* ¶ 10).
21   Airbus obtained a judgment against Nivisys Industries in Stuttgart Regional Court,
22   Germany. (*Id.* ¶ 11). Airbus later obtained a judgment against Nivisys Industries in
23   Maricopa County Superior Court. (*Id.* ¶ 12).

24       On or about May 14, 2012, Relativity Holding or Nivisys Holdings transferred
25   ownership of Nivisys Industries to WWWT. (*Id.* ¶ 13). WWWT is a wholly owned
26   subsidiary of First Texas Holding Corporation ("First Texas"), a Delaware corporation
27   owned by Thomas P. Walsh. (*Id.* ¶ 14). WWWT transferred Nivisys Industries' assets to
28   a newly-formed Delaware limited liability company, Nivisys, LLC ("Nivisys"). (*Id.* ¶

15). Nivisys is a subsidiary of First Texas, and continued conducting the business of Nivisys Industries at the same place of business with "many of the same employees, customers, and suppliers." (*Id.* ¶¶ 16-17). Nivisys continues to conduct the business of Nivisys Industries. (*Id.* ¶ 18). Airbus believes that all of Nivisys Industries' assets have been transferred to Nivisys, rendering Nivisys Industries insolvent and unable to satisfy Airbus's judgment. (*Id.* ¶ 19).

### B.    Legal Standard

A complaint may be dismissed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim upon which relief can be granted if it fails to state a cognizable legal theory or fails to allege sufficient facts under a cognizable legal theory. *Balistreri v. Pac. Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief" such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

But although a complaint "does not need detailed factual allegations," a plaintiff must "raise a right to relief above the speculative level." *Id.* This requires more than merely "a formulaic recitation of the elements of a cause of action." *Id.* A complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

In reviewing a complaint for failure to state a claim, the Court must "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable

to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). However, the Court does not have to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.*

### C. Declaratory Judgment

WWWT argues that Airbus fails to state a claim for a declaratory judgment that Nivisys is liable as a successor to Nivisys Industries for Nivisys Industries' debts because Airbus was neither a party nor a third-party beneficiary to the transactions between WWWT, Nivisys, First Texas, and Nivisys Industries. (Doc. 41 at 5). WWWT cites several cases for the proposition that only a party to a contract or a third-party beneficiary has standing to bring a declaratory judgment action relating to rights and obligations under that contract. (*Id.*)

In this case, Airbus is not a party to the agreements between WWWT, Nivisys, First Texas, and Nivisys Industries. Nor is it a third-party beneficiary of those agreements. However, WWWT's argument fails because Airbus is a judgment creditor. Although WWWT is correct that generally standing to bring a declaratory judgment action relating to a contract requires privity or a third-party beneficiary, this rule applies only to pre-judgment plaintiffs. *See Anderson v. Everest Nat'l Ins. Co.*, 984 F. Supp. 2d 974, 979 (D. Ariz. 2013). Judgment creditors have standing to bring garnishment actions against the judgment debtor, *id.*, and this right to apply for a writ of garnishment creates the adverse legal interests necessary for standing to exist. WWWT's reliance upon *Mardian Equipment Company* is misplaced, as the Court has previously explained in *Anderson. See Anderson*, 984 F. Supp. 2d at 978-79. Similarly, *Tri-State Generation & Transmission Association, Inc. v. BNSF Railway Co.*, 2008 WL 2465407 (D. Ariz. June 17, 2008) and *GECCMC 2005-C1 Plummer Street Office Limited v. JPMorgan Chase Bank*, 671 F.3d 1027 (9th Cir. 2012) did not involve a judgment creditor plaintiff. Therefore, for the same reasons as explained in *Anderson*, Airbus has standing to seek a declaratory judgment.[3]

---

[3] WWWT also points out that Airbus' First Amended Complaint cites Arizona's

**D.       Successor Liability and Fraudulent Transfer**

The parties dispute which law applies to Airbus' claims for successor liability. WWWT contends that Texas law applies and that Airbus fails to state claims for fraudulent transfer and successor liability under Texas law. (Doc. 41 at 6). Airbus contends that Arizona law applies and argues it has stated claims under Arizona law, but even if Texas law applied, under Texas law as well. (Doc. 51 at 14-16). Because the Court concludes that Airbus has stated claims under both Arizona and Texas law, the Court need not conduct a choice-of-law analysis to determine which state's law applies.

**1.       Successor Liability**

**a.       Arizona Law**

Under Arizona law, a "when a corporation sells or transfers its principal assets to a successor corporation, the latter will not be liable for the debts and liabilities of the former, unless (1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation [or reincarnation] of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." *A.R. Teeters & Assocs., Inc. v. Eastman Kodak Co.*, 836 P.2d 1034, 1039 (Ariz. Ct. App. 1992).

Airbus argues that WWWT and First Texas expressly assumed the liabilities of Nivisys Industries, and points to the settlement agreement transferring ownership of Nivisys Industries to WWWT as evidence. (Doc. 51 at 16). Although Airbus did not attach this settlement agreement to the First Amended Complaint, Airbus' complaint necessarily relies upon this document, both parties cite to it, and its authenticity is not contested. Therefore, the Court may consider it in ruling on WWWT's motion, without converting the motion into one for summary judgment.[4] *See Lee v. City of L.A.*, 250 F.3d

---

declaratory judgments statute. (Doc. 41 at 4-5). WWWT is correct that the applicable statute is the federal Declaratory Judgment Act. *See Anderson*, 984 F. Supp. 2d 977 n.1.

[4] Other documents attached to WWWT's motion to dismiss, such as the affidavit of Tom Walsh, do not fall into this category and the Court will not consider them in

668, 686 (9th Cir. 2001) ("If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them.").

In the settlement agreement, Nivisys Holdings (owner of Nivisys Industries) explicitly represented and warrantied to WWWT and Nivisys that it had no outstanding liabilities other than those listed in the agreement. (Doc. 51-1 at 84). The agreement lists a claim for breach of contract by Airbus' predecessor as an outstanding potential liability.[5] (*Id.* at 104). Accordingly, Airbus has alleged facts sufficient to render plausible its claim that WWWT and Nivisys expressly assumed Nivisys Industries' liability to Airbus.

WWWT argues, however, that a valid claim for successor liability requires that the transaction alleged to result in successor liability be an asset purchase, and WWWT never purchased the assets of Nivisys Industries. (Doc. 41 at 9; Doc. 57 at 4-5). The Court has searched Arizona case law and has found no decision restricting the test for successor liability to only those instances in which the asset transfer was not to a creditor of the original corporation. To the contrary, the test set forth in *A.R. Teeters* expressly applies to circumstances not involving an asset purchase; the Arizona Court of Appeals stated that the test applies "when a corporation sells *or transfers* its principal assets to a successor corporation." 836 P.2d at 1039. Thus, successor liability may arise under Arizona law when the assets of a corporation are transferred to a successor corporation without a sale.[6] Accordingly, Airbus states a claim under Arizona law for successor liability.

---

ruling on the motion.

[5] Although WWWT asserts that Airbus has not established that it is a valid successor to Carl Zeiss Optronics GmbH, the named entity in the settlement agreement, because in ruling on a Rule 12(b)(6) motion to dismiss the Court assumes the facts in the complaint to be true and Airbus alleges it obtained a judgment against Nivisys Industries based on this claim, WWWT's assertion is without merit at this juncture.

[6] WWWT cites A.R.S. § 47-9402 for the proposition that a secured creditor is not liable for the debtor's acts. (Doc. 41 at 9-10). WWWT misapplies this statute, which holds only that being a secured creditor, "without more," does not cause the creditor to be liable for the debtor's acts or omissions. Here, the assets of Nivisys Industries were transferred to WWWT.

b.      **Texas Law**

Under Texas law, the only viable theory of successor liability is express assumption. *See E-Quest Mgmt., LLC v. Shaw*, 433 S.W.3d 18, 25 (Tex. App. 2013). "[A] person acquiring property . . . may not be held responsible or liable for a liability or obligation of the transferring domestic entity that is not expressly assumed by the person." Tex. Business Organizations Code Ann. § 10.254 (2015). Because, as the Court has discussed, Airbus alleges facts sufficient to render plausible its claim that WWWT and Nivisys expressly assumed Nivisys Industries' liability to Airbus, Airbus also states a claim under Texas law for successor liability.

2.      **Fraudulent Transfer**

Because Airbus' claim for fraudulent transfer references the Arizona Revised Statutes, the Court need only analyze that claim under Arizona law. Arizona has enacted the Uniform Fraudulent Transfer Act ("UFTA"). *State ex rel. Indus. Comm'n of Ariz. v. Wright*, 43 P.3d 203, 206 ¶ 14 (Ariz. Ct. App. 2002). The relevant UFTA statute provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

A.R.S. § 44-1005.

A claim for a constructively fraudulent transfer occurs when "an exchange lacks reasonably equivalent value and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer." *Hullett v. Cousin*, 63 P.3d 1029, 1032 ¶ 13 (Ariz. 2003) (internal quotation marks omitted). Airbus alleges that WWWT transferred all assets of Nivisys Industries to Nivisys, causing Nivisys Industries to be insolvent. (Doc. 28 ¶¶ 15, 19). This is sufficient to state a claim for a constructively fraudulent transfer.

WWWT argues that Airbus fails to state a claim for fraudulent transfer because Airbus does not plead any of the remedies permitted under the UFTA. (Doc. 41 at 17). A prayer for relief is not part of a claim, and "failure to specify relief to which the plaintiff [is] entitled [does] not warrant dismissal under Rule 12(b)(6)." *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002); *see also Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 66 (1978); *Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 918, 927-28 (C.D. Cal. 1996). Therefore, any failure to plead proper relief is not fatal to Airbus' claim.

WWWT also argues that A.R.S. § 44-1008(E)(2) precludes liability for fraudulent transfers arising from the enforcement of a security interest. (Doc. 41 at 17). However, in ruling on a motion to dismiss under Rule 12(b)(6), the Court must assume the facts of the complaint to be true. Airbus does not allege that WWWT's transactions with Nivisys Industries were merely the enforcement of a security interest, nor is it clear that they could *only* have arisen in the context of enforcing a security interest. Accordingly, this argument is not a basis for dismissal at this stage of the case.

Finally, WWWT contends that Airbus fails to plead its fraudulent transfer claim with the particularity required under Rule 9(b). (Doc. 41 at 16). Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Most courts that have addressed the issue of whether Rule 9 applies to claims for a constructive fraudulent transfer have concluded that it does not, because a constructive fraudulent transfer claim "focuses entirely on the transaction at issue and does not include elements of knowledge, intent, or purpose." *Sunnyside Dev. Co. v. Cambridge Display Tech. Ltd.*, 2008 WL 4450328, at *9 (N.D. Cal. Sept. 29, 2008). In applying Nevada's constructive fraudulent transfer law, which is similar to that of Arizona, the District of Nevada has held:

> The weight of authority is that Rule 9 applies to claims of actual fraudulent transfer but not to claims of constructive fraudulent transfer. *See In re Tronox Inc.*, 429 B.R. 73, 96 (Bankr.S.D.N.Y. 2010) (collecting cases concluding Rule

9(b) does not apply to claims of constructive fraudulent conveyance); *In re Air Cargo, Inc.*, 401 B.R. 178, 192 (Bankr.D.Md.2008) (noting that while courts are divided on the question whether Rule 9(b) applies to constructive fraudulent conveyance claims, the majority have concluded it does not); *Van-Am. Ins. Co. v. Schiappa, et al.*, 191 F.R.D. 537, 542–43 (S.D.Ohio 2000) (applying Rule 9(b) to claims of actual fraudulent transfer but not to claims of constructive fraudulent transfer; *Kelleher v. Kelleher*, 2014 WL 94197, at *6 (N.D.Cal.2014); *Hyosung (Am.), Inc. v. Hantle USA, Inc.*, 2011 WL 835781, at *4 (N.D.Cal. March 4, 2011); *Sunnyside Dev. Co. LLC v. Cambridge Display Tech. Ltd.*, 2008 WL 4450328, at *9 (N.D.Cal.2008). The court agrees with the reasoning of these courts and concludes that Rule 9 applies to a claim of actual fraudulent transfer under Nevada law but not to a claim of constructive fraudulent transfer.

*Takiguchi v. MRI Int'l, Inc.*, 2015 WL 1609828, at *2 (D. Nev. Apr. 10, 2015). The Court agrees with these authorities; Airbus was not required to state its constructive fraudulent transfer claim with the particularity required by Rule 9.

## IV.    Motion for a More Definite Statement

WWWT moves in the alternative for a more definite statement under Rule 12(e). (Doc. 41 at 17). Rule 12(e) permits a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired." Thus, WWWT cannot file a motion for a more definite statement simultaneously with, or after, its motion to dismiss. Moreover, even if WWWT's motion for a more definite statement were procedurally proper, it is unmeritorious. Rule 12(e) motions should be "granted only where the complaint is so indefinite that the defendants cannot ascertain the nature of the claims being asserted and 'literally cannot frame a responsive pleading.'" *Hubbs v. Cnty. of San Bernardino, CA*, 538 F. Supp. 2d 1254, 1262 (C.D. Cal. 2008); *see also E.E.O.C. v. Alia Corp.*, 842 F. Supp. 2d 1243, 1250 (E.D. Cal. Feb. 6, 2012) ("The purpose of Rule 12(e) is to provide relief from a pleading that is unintelligible, not one that is merely lacking detail."). Airbus' First Amendment Complaint is not only intelligible, but states valid claims. WWWT's motion for a more

definite statement is denied.

**V.    Objections to Evidence**

WWWT filed a document titled "Defendant's Objections to Evidence in Support of Plaintiff's Opposition to Defendant WWWT Enterprises, LLC's Motion to Dismiss" (Doc. 56) in which WWWT objects to evidence attached to Airbus' response to WWWT's motion to dismiss. WWWT's filing was without effect because evidence attached to a responsive brief may not be considered in ruling on a Rule 12(b)(6) motion. More significantly, WWWT's filing is procedurally improper. Local Rule of Civil Procedure ("Local Rule") 7.2(m)(2) prohibits separate filings concerning "the admissibility of evidence offered in support of or opposition to a motion."

Airbus has filed a motion to strike WWWT's filing. (Doc. 70). Local Rule 7.2 does permit a motion to strike "any part of a filing on the ground that it is prohibited (or not authorized) by a statute, rule, or court order." LRCiv 7.2(m)(1). Because Local Rule 7.2(m)(2) prohibits WWWT's filing, Airbus' motion to strike under Local Rule 7.2(m)(1) is proper and will be granted.

Both parties also engaged in the same behavior with respect to the motion for change of venue, with WWWT filing an improper "Objections to Evidence" (Doc. 65) and Airbus filing a motion to strike WWWT's filing (Doc. 76). For the same reasons, Airbus' motion to strike will be granted. To the extent the parties have raised any evidentiary objections in their response or reply concerning the motion for change of venue, the Court has considered these objections in determining the facts.

**VI.    Motions to Quash Subpoenas**

Two motions to quash subpoenas have been filed in this case. First, attorney James P. O'Sullivan of the law firm of Tiffany & Bosco, PA has moved to quash a subpoena served on Mr. O'Sullivan. (Doc. 40). In response, Airbus asks the Court to compel Mr. O'Sullivan to comply with this subpoena. (Doc. 43). Second, First Texas has moved to quash a subpoena served on it, (Doc. 63), and Airbus has moved the Court to compel First Texas' compliance with this subpoena. (Doc. 49).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### A.     Legal Standard

Rule 45 requires a court to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies; or . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). The party moving to quash a subpoena bears the burden of persuasion, "but the party issuing the subpoena must demonstrate that the discovery sought is relevant." *Drummond Co. v. Collingsworth*, 2013 WL 6074157, at *9 (N.D. Cal. 2013).

### B.     Subpoena Served on Mr. O'Sullivan

Airbus served a subpoena on Mr. O'Sullivan, a non-party, asking him to produce all documents relating to WWWT, Nivisys, and First Texas, including documents relating to "the transfer, sale, purchase, acquisition, or surrender of any interest in Nivisys Holdings, LLC, Nivisys Industries IC-DISC, Inc., and/or Nivisys Industries, LLC, and/or any assets or liabilities of such entities." (Doc. 40-1 at 6). Mr. O'Sullivan objects to the subpoena on the grounds that it requests material protected by the attorney-client privilege and work-product privilege, is overly broad, and is unduly burdensome.[7] (Doc. 40 at 2). Airbus asserts that Mr. O'Sullivan possesses information relevant to the present case because he represented the former CEO and chairman of Nivisys Industries during negotiations with First Texas and the other parties involved in the settlement transactions. (Doc. 43 at 2).

Mr. O'Sullivan properly invokes Ethical Rule 1.6 of the Arizona Rules of Professional Conduct in refusing to disclose his client's information unless the Court issues a final order directing him to disclose such information. (Doc. 40 at 5). The Court notes that if it ordered such disclosure, Mr. O'Sullivan would presumably produce a privilege log identifying why all of the requested information is subject to a privilege. *See* Fed. R. Civ. P. 45(e)(2)(A).

The subpoena is overly broad and therefore unduly burdensome upon Mr.

---

[7] Pursuant to the Court's Rule 16 Scheduling Order (Doc. 80), written discovery motions are prohibited. However, because Mr. O'Sullivan is a non-party and therefore was not served with a copy of that Order, the Court will rule on his written motion.

O'Sullivan. Airbus requests all documents relating to Mr. O'Sullivan's clients, and although Airbus lists documents relating to the transactions involving Nivisys and Nivisys Industries as an *example* of responsive documents, it does not limit its demand for production to these documents.[8] Thus, the subpoena in essence asks Mr. O'Sullivan and Tiffany & Bosco to turn over all documents relating to certain entities, regardless of relevance to this case. This is an undue burden, and the Court will quash the subpoena.

### C.   Subpoena Served on First Texas

On January 26, 2015, Airbus served a subpoena duces tecum on non-party First Texas. Airbus has moved to compel compliance with the subpoena, and First Texas has moved to quash the subpoena. (Docs. 49 & 63). In correspondence, First Texas (who is represented by the same counsel as WWWT) admits awareness of the Court's Rule 16 Scheduling Order prohibiting the filing of discovery motions. (Doc. 52 at 19). Accordingly, the motions relating to this subpoena are denied without prejudice. The parties may raise the issue via the method prescribed in the Court's Rule 16 Scheduling Order.

### VII.   Conclusion

For the foregoing reasons,

**IT IS ORDERED** denying WWWT's motion to transfer venue. (Doc. 45).

**IT IS FURTHER ORDERED** denying WWWT's motion to dismiss (Doc. 41).

**IT IS FURTHER ORDERED** granting Airbus' motion to strike (Doc. 70).

**IT IS FURTHER ORDERED** striking Doc. 56.

**IT IS FURTHER ORDERED** granting Airbus' motion to strike (Doc. 76).

**IT IS FURTHER ORDERED** striking Doc. 65.

**IT IS FURTHER ORDERED** granting the Motion to Quash Subpoena Duces Tecum and Notice of Duces Tecum Deposition Served on Tiffany & Bosco and Attorney Jim O'Sullivan (Doc. 40).

---

[8] The Court expresses no opinion as to whether a subpoena limited in this manner would be unduly burdensome.

**IT IS FURTHER ORDERED** quashing the subpoena attached as Exhibit A to Doc. 40.

**IT IS FURTHER ORDERED** denying without prejudice First Texas' motion to quash subpoena (Doc. 63).

**IT IS FURTHER ORDERED** denying without prejudice Airbus' motion to compel First Texas' compliance with subpoena (Doc. 49).

**IT IS FURTHER ORDERED** denying without prejudice First Texas' motion for a protective order (Doc. 78).

Dated this 28th day of May, 2015.

James A. Teilborg
Senior United States District Judge