WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Airbus DS Optronics GmbH, | No. CV-14-02399-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Nivisys LLC, et al., | |
| Defendants. | |

Pending before the Court are three separate motions to dismiss the Second Amended Complaint ("SAC"). (Doc. 117; Doc. 119; Doc. 127). Defendants[1] Nivisys, LLC ("Nivisys") and WWWT Enterprises, LLC ("WWWT") seek to dismiss Counts III and IV of the Complaint. (Doc. 117, 119). Defendant First Texas Holdings Corporation ("First Texas") seeks to dismiss the SAC in in its entirety. (Doc. 127). Having reviewed the parties' filings and considered oral argument, the Court now rules on the motions.

**I.**

Plaintiff[2] Airbus DS Optronics GmbH is a foreign company organized under the laws of the country of Germany, and is an international leader in the manufacturing of

---

[1] Defendant Nivisys Industries, LLC ("Nivisys Industries") did not file a motion to dismiss, and is a dissolved corporate entity.

[2] The recitation of facts is taken as true from the well-pleaded factual allegations contained in the SAC. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

optical and optoelectronic products for defense and security purposes. (Doc. 112 at 2). Nivisys Industries was a limited liability company organized under the laws of the State of Arizona, formed on or about January 26, 2003. (*Id.* at 3). In or about March 2008, Nivisys Industries' members sold their full interest in Nivisys Industries either to Relativity Holding, LLC ("Relativity Holding"), a Delaware limited liability company, or to one of Relativity Holding's subsidiaries, Nivisys Holdings, LLC ("Nivisys Holdings").

In or about October 2011, Nivisys Industries breached a contract between itself and Plaintiff that had been executed approximately in or about September 2008. (Doc. 112 at 3). Plaintiff obtained a judgment against Nivisys Industries in Stuttgart Regional Court, Germany, and later obtained a judgment against Nivisys Industries in Maricopa County Superior Court. (*Id.*)

On or about March 19, 2012, First Texas formed WWWT, a wholly owned subsidiary. (Doc. 112 at 3). On or about May 14, 2012, Nivisys Industries' full ownership was transferred to WWWT. (*Id.*). First Texas, through WWWT, proceeded to run Nivisys Industries until August 1, 2012, when First Texas transferred Nivisys Industries' assets to WWWT. (*Id.*). First Texas thereafter transferred Nivisys Industries' assets again from WWWT to Nivisys as part of an internal reorganization. (*Id.*). Following the internal reorganization, First Texas continued to conduct Nivisys Industries' business through Nivisys. (*Id.* at 5). Plaintiff alleges that all of Nivisys Industries' assets have been transferred to Nivisys, rendering Nivisys Industries insolvent and unable to satisfy Plaintiff's judgment.

On October 28, 2014, Plaintiff filed suit against Nivisys in Maricopa County Superior Court, which was thereafter removed pursuant to 28 U.S.C. § 1441(b) (2012). (Doc. 1). Plaintiff added WWWT, First Texas, and Nivisys Industries by amendment. Plaintiff's principal contention is that Defendants be held "liable for their debt owed" to Plaintiff, as Defendants are "responsible and liable for satisfaction of the [Maricopa County] Judgment or the Stuttgart Court Judgment obtained by [Plaintiff] against Nivisys Industries, LLC." (Doc. 112 at 2). On November 6 and November 23, 2015, respectively,

Defendants each filed a motion to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6). First Texas seeks to have the SAC dismissed against it in its entirety. WWWT and Nivisys seek to have Counts III and IV—piercing the corporate veil and lender liability—dismissed against them. Having set forth the pertinent factual and procedural background, the Court turns to Defendants' motions.

## II.

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facial plausibility exists if the pleader sets forth factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Plausibility does not equal "probability," but requires more than a sheer possibility that a defendant acted unlawfully. *Id*. "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (citing *Twombly*, 550 U.S. at 557).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief," as "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but

- 3 -

also 'grounds' on which the claim rests." *Id*. at 555 n.3 (citing 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1202, pp. 94, 95 (3d ed. 2004)). Thus, Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

The Court must construe the facts alleged in the complaint in the light most favorable to the drafter and must accept all well-pleaded factual allegations as true, *Shwarz*, 234 F.3d at 435, *Cafasso*, 637 F.3d at 1053 ("[w]hen considering a Rule 12(c) dismissal, we must accept the facts as pled by the nonmovant"), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### III.

The Court will begin its analysis with Defendants' argument that Count III (piercing the corporate veil) and Count IV (lender liability) must be dismissed from the SAC. The Court will then turn to First Texas' argument that Count II[3] (fraudulent transfer) must be dismissed. Finally, the Court will address Plaintiff's request for leave to amend and Defendants' request for attorneys' fees.

**A.   Count III: Piercing the Corporate Veil**

Defendants[4] first contend that the SAC pleads "piercing the corporate veil" as a substantive cause of action, which the state of Arizona does not recognize, and therefore

---

[3] Count I of the SAC, seeking a declaratory judgment, does not name First Texas.

[4] First Texas argues that Texas law should apply to the Court's analysis of Plaintiff's "piercing the corporate veil" claim. (Doc. 127 at 4). First Texas, however, fails to identify substantive differences between each state's respective jurisprudence, and argues that "whether Texas or Arizona law is applied," First Texas is entitled to prevail. (*Id.*). The Court finds it unnecessary to determine which state has the "most significant relationship" to the matter and will apply Arizona law. *See Gianaculas v. Trans World Airlines, Inc.*, 761 F.2d 1391, 1393 (9th Cir. 1985) (The Court need not decide a choice of law question if the result would be the same under the law of both states)

the claim must be dismissed. Defendants are correct in noting that Arizona does not recognize piercing the corporate veil[5] or alter ego as an independent cause of action. *See Five Points Hotel P'ship v. Pinsonneault*, 11-CV-00548-PHX-JAT, 2014 U.S. Dist. LEXIS 60627, at *8-13 (D. Ariz. May 1, 2014) (finding that although the Arizona Supreme Court has not directly addressed the issue, overwhelming persuasive jurisprudence leads to the prediction that it would not recognize piercing the corporate veil or alter ego as a standalone cause of action under Arizona law); *Piquadio*, 2016 U.S. Dist. LEXIS 12135, at *5-7. Plaintiff asserts that Defendants argue form over substance, and that the SAC clearly pleads alter ego as a basis for relief, rather than a substantive cause of action. (Doc. 132 at 7).

While acknowledging that alter ego is not an independent cause of action, the Court finds that sufficient factual allegations throughout the SAC establish that alter ego was pleaded as a form of derivative liability to disregard Nivisys Industries, WWWT's and/or Nivisys' corporate form and hold First Texas and/or WWWT and Nivisys liable for fraudulent transfer of assets, the underlying substantive cause of action. Defendants' argument is reasonable, given the presentation of "piercing the corporate veil" as a specifically delineated count, as well as Plaintiff's failure to concretely identify which corporate form should be disregarded, and for what underlying substantive claim. Nonetheless, the Court is not persuaded, as Defendants advocate for an overly formulistic federal pleading requirement, in tension with Rule 8. The Court's finding is based on a plain reading of the face of the SAC, and not on Plaintiff's attempts to "clarify" the SAC in its brief. *See Frenzel v. Aliphcom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014) (noting that "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss"); *Horne v. USDE*, No. 08-CV-1141-PHX-MHM, 2009 U.S. Dist. LEXIS 24016, at *14 (D. Ariz. March 23, 2009).

---

[5] The Court will hereafter refer to this theory of derivative liability as "alter ego." *See Piquadio v. Am. Legal Funding LLC*, No. CV-15-00579-PHX-GMS, 2016 U.S. Dist. LEXIS 12135, at *4-5 (D. Ariz. Feb. 2, 2016) (noting that "piercing the corporate veil" is "otherwise known as an alter ego claim").

In the alternative, Defendants argue that the SAC fails to plead sufficient facts to establish a plausible claim upon which relief can be granted. The Court must first determine which of Defendants' "corporate forms" the SAC seeks to disregard, and for which substantive claims. Plaintiff pleads that the "observance of the corporate form of WWWT, Nivisys, and Nivisys Industries would work substantial injustice on" Plaintiff and that "the corporate veil of WWWT, Nivisys, and/or Nivisys Industries should be pierced and disregarded such that their respective members and parent companies are liable for the debt owed to" Plaintiff. (Doc. 112 at 7). Plaintiff must tie this theory of derivative liability to a substantive cause of action in the SAC; it cannot seek to reach Nivisys Industries' members for the judgment domesticated in Maricopa County Superior Court. The SAC contains claims of fraudulent transfer of assets and successor liability.[6]

Plaintiff's fraudulent transfer claim is asserted against WWWT and/or Nivisys and Nivisys Industries as the transferor and transferee in certain transactions, (Doc. 112 at 6), but Plaintiff seeks to hold First Texas derivatively liable for the acts of its subsidiaries. (*Id.* at 6-7, 8). Thus, Plaintiff seeks to disregard the corporate form of WWWT and Nivisys, and the SAC must therefore plead sufficient facts to establish a plausible claim that First Texas should be held derivatively liable for WWWT's and/or Nivisys' fraudulent transfers.[7]

---

[6] The Court's finding that Plaintiff's claim of lender liability must be dismissed is fully addressed *infra*.

[7] The Court notes that oral argument, as well as the parties' briefs included substantial argument relying on materials outside of the SAC. (*See* Doc. 132 at 9; Doc. 131 at 9; Doc. 157 at 6; Doc. 154 at 13). "[W]hen the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), "review is limited to the complaint." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). Generally, the Court "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion," except where the material "is properly submitted as part of the complaint" or where "the documents authenticity . . . is not contested and the plaintiff's complaint necessarily relies on them," or if the Court takes "judicial notice of matters of public record." *Id.* (internal quotation marks and citations omitted). The parties have not asserted the grounds upon which to consider these materials, and as a result, the Court will restrict its review to the factual allegations contained in the SAC.

Generally, a parent corporation is not held liable for the actions of a subsidiary. *U-Haul Int'l v. Nat'l Fire Ins. Co.*, 10-CV-1047-PHX-SMM, 2011 U.S. Dist. LEXIS 219, at *9 (D. Ariz. Jan. 3, 2011) (citing *Deutsche Credit Corp. v. Case Power & Equip. Co.*, 876 P.2d 1190, 1195 (Ariz. Ct. App. 1994)). But there are exceptions to this rule, one such being the alter ego theory, which "allows a parent corporation to be held liable for the acts of its subsidiary when the individuality or separateness of the subsidiary corporation has ceased." *Id.* at *10 (quoting *Gatecliff v. Great Republic Life Ins. Co.*, 821 P.2d 725, 728 (Ariz. 1991)). To prevail and hold a parent corporation liable pursuant to the alter ego theory, Plaintiff must "prove both (1) unity of control and (2) that observance of the corporate form would sanction a fraud or promote injustice." *Gatecliff*, 821 P.2d at 728 (citing *Dietel v. Day*, 492 P.2d 455, 457 (Ariz. 1972)). To establish unity of control, Plaintiff must show that the parent corporation "exerts 'substantially total control over the management and activities' of its subsidiary." *U-Haul Int'l*, 2011 U.S. Dist. LEXIS 219, at *10 (citation omitted). "Substantially total control may be proved" by a number of factors, including "stock ownership by the parent; common officers or directors; financing of subsidiary by the parent; payment of salaries and other expenses of subsidiary by the parent; failure of subsidiary to maintain formalities of separate corporate existence; similarity of logo; and plaintiff's lack of knowledge of subsidiary's separate corporate existence." *Gatecliff*, 821 P.2d at 728.

The SAC, taking all well-pleaded facts as true and drawing reasonable inferences in Plaintiff's favor, establishes a plausible claim that WWWT and Nivisys operated as mere alter egos, and that First Texas should be held liable for their engagement in fraudulent transfers. To begin, the SAC pleads that First Texas, through WWWT and Nivisys, transferred the assets of Nivisys Industries for the purpose of shielding these assets from collection by a judgment creditor. Plaintiff has two valid judgments against Nivisys Industries for breach of contract, and it cannot collect due to the fact that Nivisys Industries was stripped of its assets and then dissolved. Observance of WWWT's and

- 7 -

Nivisys' corporate form under these facts would "sanction a fraud" by validating First Texas' attempts to shield its assets.

The Court further finds that the SAC pleads sufficient factual allegations to establish "unity of control" by First Texas over WWWT and Nivisys. Both WWWT and Nivisys are wholly-owned subsidiaries of First Texas and all three companies are managed by the same individual. First Texas created WWWT for the sole purpose of acquiring Nivisys Industries' assets and continuing Nivisys Industries' business while retaining many of Nivisys Industries' employees, customers, and suppliers. First Texas then transferred Nivisys Industries' assets a second time to Nivisys, to maintain Nivisys Industries' business and to continue to market products that contained components produced by Plaintiff, which were the subject of Plaintiff's breach of contract judgment against Nivisys Industries. Succinctly, the pleaded facts establish that First Texas had significant financial and management control over the two subsidiaries, and utilized these subsidiaries to continue the business of Nivisys Industries while simultaneously hiding its assets from a judgment creditor. The facts pleaded establish a plausible claim of shared common officers and directors, financing by the parent corporation, full ownership of subsidiaries, and—ultimately—substantial control over the management and activities of the subsidiaries by the parent corporation. *See U-Haul Int'l*, 2011 U.S. Dist. LEXIS 219, at *12-13 (finding that the plaintiff failed to state a plausible claim for derivative liability under the alter ego theory where the plaintiff simply identified the parent corporation and did not allege that it took active part in the actions that gave rise to the lawsuit)

Based on the foregoing, the Court finds that the SAC pleads a plausible claim for derivative liability based on First Texas' control of subsidiaries that were engaged in fraudulent transfer of assets.

**B.     Count IV: Lender Liability**

Defendants next argue that Count IV—Plaintiff's claim of lender liability—must be dismissed, as it has not been recognized as a cause of action under Arizona law.[8] The Court agrees.

Plaintiff asserts, absent citation to Arizona case law, that "lender liability is a theory of liability under Arizona law[] and the bases for such liability are varied." (Doc. 131 at 10; Doc. 132 at 10; Doc. 154 at 14). Plaintiff offers in support of its contention two Ninth Circuit cases, both of which the Court finds to be inadequate to establish that "lender liability" is a cognizable cause of action in Arizona. Plaintiff first proffers *Tucker v. First Maryland Sav. & Loan*, *Inc.*, 942 F.2d 1401, 1402 (9th Cir. 1991), a case where the Ninth Circuit reviewed the district court's decision to abstain from hearing a "lender liability action" under the abstention doctrines established in *Burford v. Sun Oil. Co.*, 319 U.S. 315 (1943), and *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). The *Tucker* panel never addressed the "lender liability action" directly, or even set forth what the claim encompassed, and the Court can discern no language from the opinion recognizing "lender liability" as a substantive cause of action under state law. Plaintiff's additional citation, *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1397 (9th Cir. 1996), is similarly unpersuasive. In *Newbery Corp.*, the only mention of "lender liability" comes, in passing, during the recitation of facts. The panel merely mentioned that the plaintiff had filed a "multi-million dollar lender liability claim" against a lender and that a subsequent settlement had released the lender from potential liability. The panel did not address lender liability in a substantive manner. *Id.*

Absent any on-point authority from Arizona appellate courts, the Court must "predict how the highest state court would decide the issue," looking to persuasive authority, statutes, and secondary sources for guidance. *Vestar Dev. II*, *LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001) (citation omitted). Having consulted

---

[8] Because the Court agrees with Defendants on this point, it need not consider Defendants' alternative argument, that there has "never been any lender/borrower relationship between Plaintiff and any of the named Defendants." (Doc. 127 at 8).

- 9 -

the aforementioned sources, the Court finds that the Arizona Supreme Court would likely conclude that "lender liability" is not a substantive cause of action in Arizona.

Substantial persuasive authority and several secondary sources have addressed the issue, and concluded that "lender liability" is not itself a cognizable legal claim, but rather an umbrella term—a descriptor—that has been applied to a number of common law and statutory causes of action. *See Steinberger v. McVey*, 318 P.3d 419, 431 (Ariz. Ct. App. 2014) (finding that the plaintiff had asserted a cognizable claim to hold a lender liable for increased risk of economic harm under the "good Samaritan" doctrine); Joseph Jude Norton, 1 Lender Liability Law and Litigation § 1.01 (Matthew Bender, 2015) (noting that "[i]ndicia of potential lender liability include inordinate lender control, atypical lending practices, lack of professionalism, abuse of a special relationship, and conflicts of interest" that manifest themselves in "[n]umerous common law theories and causes of action" and "[v]arious statutory theories"); *Cary Oil Co. v. MG Ref. & Mktg., Inc.*, 90 F. Supp. 2d 401, 418 (S.D.N.Y. 2000) (finding that "[l]ender liability is not an independent cause of action, but a term that refers to the imposition of traditional contract or tort liability on a bank or other financial institution" that "may be predicated on . . . *inter alia*, breach of contract, breach of fiduciary duty, common law fraud, duress, tortious interference with contract, defamation or negligence"); *Sovereign Bank v. Fowlkes*, 2010 R.I. Super. LEXIS 15, at *44 (R.I. Super. Ct. Jan. 15, 2010) (finding that lender liability "is not a particular cause of action but rather the umbrella term used to describe the body of common and statutory law covering a broad spectrum of claims, including both contract and tort, against lending institutions"); *Pension Trust Fund v. Fed. Ins. Co.*, 307 F.3d 944, 953-54 (9th Cir. 2002) (analyzing the "breach of fiduciary duty" claim that was "implied in the lender liability claim"); *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 492 (3d Cir. 2001) (noting that the term lender liability does not stand for a single cause of action but "has now taken on a broad meaning to refer to any kind of liability that can grow out of the lender/borrower relationship"); *In re Revco D.S., Inc.*, 1990 Bankr. LEXIS 2966, at *105 (N.D. Ohio Bankr. Dec. 17, 1990) (noting that

"[t]he doctrine of lender liability has been used to describe a broad range of theories, including failure to act in good faith, fraud and duress, dominating or exerting excessive control over a borrower, and breach of a fiduciary or special duty"); Francis E. Freund, *Special Project: Lender Liability: A Survey of Common-Law Theories*, 42 Vand. L. Rev. 855, 855-56 (1989) (stating that "lender liability suits" "are based on a number of common-law theories for liability including breach of contract, breach of fiduciary duty, and breach of good faith, . . . fraud, duress, interference, and negligence," as well as some statutory claims).

The weight of persuasive authority does not support the conclusion that the Arizona Supreme Court would recognize "lender liability" as a substantive cause of action. Plaintiff argues, seemingly in the alternative, that even if lender liability itself is not a substantive cause of action, the facts pleaded in the SAC establish several causes of action that would fall under the umbrella term of "lender liability." (Doc. 154 at 15). Plaintiff, however, proffered only one: the instrumentality theory. (*Id.*).

"Where the theory is recognized, a lender may be held liable under the common-law instrumentality theory when the lender exerts such a degree of control over the borrower that the borrower becomes a mere business conduit for the lender." *Famm Steel, Inc. v. Sovereign Bank*, 571 F.3d 93, 104 (1st Cir. 2009). To establish a claim of lender liability under the instrumentality theory, plaintiff must make "a strong showing that the creditor assumed actual, participatory, total control of the debtor" and "the facts must 'unmistakably show that the subservient corporation was being used to further the purposes of the dominant corporation and that the subservient corporation in reality had no separate, independent existence of its own." *Id.* at 105 (quoting *Krivo Indus. Supply Co. v. Nat'l Distillers & Chem. Corp.*, 483 F.2d 1098, 1104 (5th Cir. 1973)). Plaintiff has again failed to cite to any Arizona authority recognizing instrumentality lender liability as a cause of action, or suggesting that Arizona courts would entertain such a claim. The Court's survey of persuasive authority does not support a finding that the claim is so widely accepted as to assume Arizona courts would recognize the cause of action, absent

on-point authority. Accordingly, the Court also finds that instrumentality lender liability is not a recognized cause of action in Arizona.

It is possible to read the SAC to allege that, under Count IV, the common law instrumentality theory should be utilized to disregard the corporate form of some combination of Nivisys Industries, Nivisys, and WWWT to hold either First Texas or WWWT and Nivisys liable for the actions of their respective subsidiaries.[9] (Doc. 112 at 7, 8; Doc. 132 at 11). But while the common law instrumentality theory "is distinct from . . . the alter ego theory," *Gatecliff*, 821 P.2d at 728, it is still a "form[] of derivative liability arising from the underlying substantive cause of action" and not a substantive claim. *Lindquist v. Farmers Ins. Co.*, 06-CV-597-TUC-FRZ, 2008 U.S. Dist. LEXIS 11832, at *10 (D. Ariz. Feb. 6, 2008) (citation omitted) (noting that "[j]oint venture, alter ego, and single business enterprise allegations" are all forms of "derivative liability"); *see also Bobrowski v. Red Door Group*, No. 09-CV-02077-PHX-FJM, 2011 U.S. Dist. LEXIS 89254, at *13 (D. Ariz. 2011) (noting that the plaintiff's allegations of alter ego and joint venture are "forms of derivative liability arising from the underlying substantive cause of action") (citation omitted). The SAC's plain language presents "lender liability" as an independent, substantive cause of action to hold some variation of First Texas, WWWT, and Nivisys liable for "improper conduct as lenders." (Doc. 112 at 7). Plaintiff may not re-brand this count after the fact as a theory of derivative liability. *Frenzel*, 76 F. Supp. 3d at 1009.

Accordingly, the Court finds that Plaintiff failed to plead a recognized cause of action in Count IV, and seeing no cognizable legal theory to support this claim, Count IV of the SAC will be dismissed. *Jones v. Bank of Am.*, *N.A.*, No. CV-09-2129-PHX-JAT, 2010 U.S. Dist. LEXIS 54198, at *5 (D. Ariz. June 1, 2010) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988), *Weisbuch v. County of L.A.*, 119 F.3d

---

[9] Plaintiff's briefs appear to suggest that lender liability, similar to alter ego, is merely a basis for relief that has been pleaded, and that analyzing it as a substantive cause action is an overly formulistic reading of the SAC. (Doc. 131 at 10; Doc. 132 at 10; Doc. 154 at 14).

778, 783 n.1 (9th Cir. 1997)) (dismissing the plaintiff's claim for "negligent breach of contract" due to the plaintiff's failure to cite any legal authority indicating that Arizona recognized such a claim).

### C. Count II: Fraudulent Transfer

Finally, First Texas seeks to have Count II—fraudulent transfer of assets—dismissed, as "First Texas was not a party to the transfers complained of by Plaintiff," and under the UFTA, First Texas cannot be held liable for transfers carried out by its subsidiaries.[10] (Doc. 127 at 5). The Court has found that the SAC contained sufficient pleaded facts to establish a plausible theory of derivative liability to hold First Texas liable for fraudulent transfers carried out by its subsidiaries, WWWT and Nivisys. First Texas is therefore not entitled to be dismissed from the matter.

### D. Plaintiff's Request for Leave to Amend

The Court will not grant Plaintiff leave to amend the SAC. The Court's Fed. R. Civ. P. 16 (b)(1) Scheduling Order established that "any motion to amend the Complaint [must] be filed no later than August 7, 2015." (Doc. 80 at 2). The Scheduling Order was then amended, (Doc. 97), and set a new deadline of September 8, 2015. (Doc. 98 at 1). The Scheduling Order was subsequently amended a second, and third time, and all dispositive motions are now due no later than October 28, 2016. (Doc. 151 at 2; Doc. 186 at 2). Given the untimely nature of Plaintiff's request, coupled with the approaching deadline for dispositive motions and the maturity of this matter, Plaintiff has not shown good cause for leave to amend, and its request is denied. *See TriQuint Semiconductor*,

---

[10] First Texas again argues that the Court should apply Texas law. "Because [Plaintiff's] claim for fraudulent transfer references the Arizona Revised Statutes, the Court need only analyze that claim under Arizona law." *Airbus DS Optronics GmbH v. Nivisys LLC*, No. CV-14-02399, 2015 U.S. Dist. LEXIS 69074, at *23 (D. Ariz. May 28, 2015).

*Inc. v. Avago Tech. Ltd.*, No. CV-09-01531-PHX-JAT, 2010 U.S. Dist. LEXIS 89690, at *15-18 (D. Ariz. Aug. 3, 2010) (discussing untimely motions to amend under Rule 16).

### E. Defendants' Request for Attorneys' Fees

Defendants each request attorneys' fees pursuant to A.R.S. § 12-341.01 (2015) (establishing that "[i]n any contested action arising out of a contract, express or implied, the [C]ourt may award the successful party reasonable attorney fees"). Based on the aforementioned findings, Defendants' request for attorneys' fees is premature. The Court will therefore deny the request, without prejudice.

### IV.

To conclude, Plaintiff has pleaded sufficient factual allegations to establish a plausible basis for derivative liability under the theory of alter ego; the suit may proceed on this ground and First Texas will not be dismissed from the case. Furthermore, Plaintiff's claim of "lender liability" has not been recognized under Arizona law as a substantive cause of action, and must be dismissed. Finally, Plaintiff will not be given leave to amend, and Defendants' motion for attorneys' fees are denied, without prejudice.

For the aforementioned reasons,

/
/
/
/
/
/
/
/
/

Defendants' motion to dismiss Count III of the SAC, (Doc. 117; Doc. 119; Doc. 127), is **DENIED**.

Defendants' motion to dismiss Count IV of the SAC, (Doc. 117; Doc. 119; Doc. 127), is **GRANTED**.

First Texas' motion to dismiss Count II of the SAC, (Doc. 127), is **DENIED**.

Plaintiff's request for leave to amend the SAC, (Doc. 131 at 1; Doc. 132 at 1; Doc. 154 at 1), is **DENIED**.

Defendants' request for attorneys' fees pursuant to A.R.S. § 12-341.01, (Doc. 117; Doc. 119; Doc. 127), is **DENIED**, without prejudice.

Dated this 2nd day of May, 2016.

James A. Teilborg
Senior United States District Judge